IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00002-PAB-KMT

FABIOLA MENDOZA,
AMANDA MUÑOZ,
JOSE "ALBERT" GOMEZ, and
ISIDRO HERNANDEZ, on their own behalf and on behalf of all others similarly situated,

      Plaintiffs,

v.

VALLEY PARK APARTMENTS, INC.,
SJW MANAGEMENT, INC.,
WILLIAM WESLEY HEWITT, and
STEVE SUTTER,

      Defendants.

---

## ORDER

---

      This matter is before the Court on Defendants' Joint Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Powers, with Points and Authorities [Docket No. 39] filed by defendants Valley Park Apartments, Inc. ("VPA"), SJW Management, Inc. ("SJW"), William Wesley Hewitt, and Steve Sutter, and on Plaintiffs' Motion for Attorneys' Fees [Docket No. 55] filed by plaintiffs Fabiola Mendoza, Amanda Muñoz, Jose "Albert" Gomez, and Isidro Hernandez.  Defendants request sanctions be imposed on plaintiffs and/or their attorney in the amount of the $59,100 they incurred in attorneys' fees.  Docket No. 39 at 2.  Plaintiffs seek attorney's fees in the amount of $25,324.98 under the fee shifting provision of the Fair Labor Standards Act.  Docket No. 55 at 1.

## I. BACKGROUND

Plaintiffs brought this case on January 2, 2013 alleging violations of the Fair

Labor Standards Act ("FLSA"), *see* 29 U.S.C. §§ 201 *et seq*., and the Colorado

Minimum Wage Act, *see* Colo. Rev. Stat. §§ 8-6-101 *et seq*. and 7 C.C.R. 1103-1, as

well as common law claims for breach of contract.  Docket No. 1.  Specifically, plaintiffs

alleged that defendants paid Mr. Hernandez, Mr. Gomez, and Ms. Mendoza less than

the minimum hourly wage mandated by federal law for both regular and overtime hours.

Docket No. 1 at 12, ¶¶ 63-66.  Plaintiffs brought their FLSA claims as a collective action

pursuant to 29 U.S.C. § 216(b).  Docket No. 1 at 8-9.  Their state law claims were

likewise asserted as class claims under Federal Rule of Civil Procedure 23.  Docket No.

1 at 9-11.

On February 28, 2013, defendants filed a joint motion to dismiss.  Docket No. 23.

In their response to the motion to dismiss, plaintiffs waived their Colorado Minimum

Wage Act claim, their Rule 23 allegations with respect to their breach of contract claim,

and the collective action component of their FLSA claims.  Docket No. 24 at 2.

On June 3, 2013, defendants filed the joint motion for sanctions currently before

the Court, arguing that plaintiffs' counsel's conduct during the litigation was objectively

unreasonable and undertaken in bad faith.  Docket No. 39.

On May 31, 2013, in response to plaintiffs' revised settlement demand,

defendants made the following offers of judgment: (1) $5,475 to Mr. Gomez;

(2) $10,707.75 to Mr. Hernandez; and (3) $1,415 to Ms. Mendoza to resolve their

claims for unpaid overtime under the FLSA.[1]  Docket Nos. 40-42.  The offers state that

plaintiffs are also entitled to "reasonable attorney fees . . . if any, after the Court rules

on defendants' motion for sanctions."  *See, e.g.*, Docket No. 42 at 1.  Plaintiffs accepted

the offers of judgment and the Clerk entered judgment against defendants.  Docket

Nos. 40-45.

The Court, not having ruled on the merits of defendants' pending motion to

dismiss, denied it as moot.  Docket No. 47.  The Court noted that the offers of judgment

did not resolve the breach of contract claim and, declining to exercise supplemental

jurisdiction in the absence of a federal claim, dismissed it without prejudice.  *Id*. at 2-3.

On July 9, 2013, plaintiffs filed a motion to collect attorney's fees as the

prevailing party under the FLSA.  Docket No. 55.

## II.  ANALYSIS

Defendants seek sanctions under both Federal Rule of Civil Procedure 11 and

28 U.S.C. § 1927.  Docket No. 39.

### A.  Standard Under Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure provides as follows:

By presenting to the court a pleading, written motion, or other
paper—whether by signing, filing, submitting, or later advocating it—an
attorney or unrepresented party certifies that to the best of the person's
knowledge, information, and belief, formed after an inquiry reasonable under
the circumstances:

(1)  it is not being presented for any improper purpose, such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation;

---

[1]Ms. Muñoz did not assert an FLSA claim, only a breach of contract claim, and
thus did not receive an offer of judgment.  *See* Docket No. 1 at 4, ¶¶ 18-24.

(2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).

Rule 11 requires a "party's attorney to conduct a prefiling investigation of the legal and factual basis for his claims."  *Davis v. Hudgins*, 896 F. Supp. 561, 573 (E.D.Va. 1995).  "For a complaint to be reasonable, the factual investigation must have uncovered some information to support the allegations in the complaint."  *Id*. (internal citations omitted).  In determining whether a plaintiff conducted a reasonable inquiry prior to filing a complaint, courts must consider:

(1) the amount of time available to the signer for conducting a factual and legal investigation; (2) the necessity of relying on a client for the underlying factual information; (3) the plausibility of the legal position advocated; (4) the complexity of the legal and factual issues implicated; (5) whether the signer depended on forwarding counsel or another member of the bar; and (6) whether the signer was in a position to know or acquire the relevant factual details.

*Zion v. Nassan*, 727 F. Supp. 2d 388, 411 (W.D.Pa. 2010) (internal citation omitted).

"In general, when the attorney can get the information necessary to certify the validity of the claim in public fashion and need not rely on the client, he must do so."

4

*Wigton v. Rosenthall*, 137 F.R.D. 4, 5-6 (S.D.N.Y. 1991) (internal citations omitted).  "An attorney is also entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable."  *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (internal citations omitted).

### B.  Standard Under 28 U.S.C. § 1927

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "An attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith,"  *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985), or if the attorney's conduct constitutes a "reckless disregard of the duty owed by counsel to the court."  *Braley v. Campbell*, 832 F.2d 1504, 1511-12 (10th Cir. 1987).  Sanctions under § 1927 are also appropriate when "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of proceedings was unwarranted."  *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotations and citations omitted).

A district court has "wide discretion in matters of sanctions" under § 1927. *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1207 (10th Cir. 2008).  However, § 1927 should not be enforced so as to "dampen the legitimate zeal of an attorney in representing" a client.  *Braley*, 832 F.2d at 1512.  Accordingly, fees should only be awarded against attorneys whose conduct evinces a "serious and studied disregard for

5

the orderly processes of justice." *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968); *see also Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1371 n. 6 (Fed. Cir. 2012) ("Establishing attorney misconduct under § 1927 implicates a higher level of culpability than Rule 11."). Before awarding sanctions pursuant to § 1927, a court must make "specific findings" identifying "the extent of the multiplicity resulting from the attorney's behavior and the costs arising therefrom," as well as describing the "objectionable conduct" in sufficient detail to permit a meaningful response and facilitate appellate review. *Braley*, 832 F.2d at 1513.

### C.  Breach of Contract

Defendants argue that a "lawyer conducting a 'reasonable inquiry'" into the breach of contract claim alleged by Ms. Mendoza and Ms. Muñoz would have known that "plaintiffs' failure to provide the essential terms of the agreement is fatal to these claims and would not have filed these frivolous allegations after his or her clients obviously were not credible." Docket No. 39 at 5.

Plaintiffs' counsel, Brandt Milstein, responds that he "interviewed Plaintiffs at length and in detail" and "determined that Plaintiffs were credible in their descriptions of the agreements entered into and the number of apartments rented based on the detail of their accounts and the plain-spoken manner in which they presented their facts." Docket No. 49 at 5. He further states that he was unable to interview the individuals that plaintiffs identified as having witnessed the formation of the alleged oral agreements because their contact information was in defendants' control. Docket No. 49 at 5.

Ms. Munoz and Ms. Mendoza alleged that they entered into an oral agreement with defendants under which they would receive a monetary bonus for renting a certain number of apartments per month.  Docket No. 1 at 4, ¶¶ 18-24.  Defendants deny the existence of such agreements.  Docket No. 39 at 5.  On its face, this claim presents a classic dispute of fact that could probably not be resolved on summary judgment and would in all likelihood require resolution by the jury.  *See Sierra v. Stonebridge Life Ins. Co.*, No. 10-cv-03123-PAB-KMT, 2013 WL 5323083, at *8 (D. Colo. Sept. 23, 2013). The procedural posture of this case is much different.  The Court has not even issued an order on defendants' motion to dismiss this claim under Rule 12(b)(6).  Instead, the claim has been dismissed without prejudice as a pendent state law claim.  Docket No. 47.  Plaintiffs state their intent to re-file the claim in state court.  Docket No. 49 at 7.  In order to evaluate whether plaintiffs' counsel acted reasonably in bringing this claim, the Court would have to, in effect, review the claim on its merits, which it lacks jurisdiction to do, and evaluate the credibility of plaintiffs, which would be inappropriate.

Accordingly, the Court awards no sanctions on the basis of plaintiffs' breach of contract claim.

### D.  Fair Labor Standards Act

Defendants argue that plaintiffs' counsel omitted material information from the complaint regarding the value of housing that defendants provided to Mr. Gomez and Mr. Hernandez as part of their compensation.  Docket No. 39 at 6.  Defendants state that Mr. Gomez and Mr. Hernandez requested housing as part of their compensation in order to reduce their income tax liability.  *Id*.  Plaintiffs counter that the rent subsidy was

7

exempted from their regular rate of pay because it was provided primarily for defendants' benefit.  Docket No. 49 at 7-10.  In their reply brief, defendants raise the new argument that plaintiffs' settlement demand spreadsheets concede the absence of any minimum wage violation.  Docket No. 50 at 5-6.

Under the FLSA, the "cost of furnishing 'facilities,'" such as lodging, "which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages."  29 C.F.R. § 531.32(c); *see Schneider v. Landvest Corp.*, No. 03-cv-02474-WYD-PAC, 2006 WL 322590, at *28 (D. Colo. Feb. 9, 2006) (excluding cost of housing from regular wage rate where plaintiffs were required to live on-site as full-time resident managers to provide appearance of added security and allow plaintiffs and defendant more "flexibility in maintaining the facility"); *Jiao v. Shi Ya Chen*, 2007 WL 4944767, at *14 (S.D.N.Y. Mar. 30, 2007) (employer not entitled to credit lodging towards regular wage where employee was living at hotel primarily to benefit employer by assisting "late-arriving guests and [] answer[ing] late-night telephone calls").  "[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption."  *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999).

The parties' briefing discloses several disputes of fact related to the purpose for which the housing was provided, including the genesis of the arrangement, whether plaintiffs requested they be compensated via a rental subsidy, the amount of work plaintiffs performed during non-business hours, and the benefit that defendants derived from having plaintiffs on-site. *Compare* Docket No. 39 at 6-7 *with* Docket No. 49 at 7-

8

10.  None of these disputes have been resolved.  While a more meticulous litigant might have included the facts related to the housing in the complaint so as to present the Court a more complete factual picture, the Court cannot say that plaintiffs' attorney was objectively unreasonable in concluding that the rental subsidy was exempt from plaintiffs' regular rate of pay and thus did not need to be addressed in the complaint.

The Court need not consider defendants' second argument,[2] since "[i]ssues not raised in the opening brief are deemed abandoned or waived."  *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) (internal citation omitted).

In sum, defendants have not demonstrated that plaintiffs' counsel was

---

[2]This argument appears to be based on a misapplication of the FLSA. Defendants argue that, since Mr. Hernandez sought overtime compensation at the rate of $11.25 per hour, plaintiffs implicitly conceded that he was being paid more than the federal minimum wage of $7.25 per during the regular work week.  Docket No. 50 at 5-6 (citing Docket No. 41-1 at 4-5).

Where an employee is paid a certain amount for all hours worked during a given pay period, a court calculates his regular rate of pay by dividing the total compensation by the total number of hours worked. *See Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 655-56 (10th Cir. 1995) ("If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours and not just the non-overtime hours because a failure to do so will result in a rate that is not representative of the rate actually paid for the 'normal, non-overtime workweek.'"); *see also* 29 C.F.R. § 778.325 ("If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and to statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55.").

According to plaintiffs' spreadsheet, Mr. Hernandez received between $600 and $800 every two weeks as compensation for between 80 and 120 hours of work.  Docket No. 41-1 at 4-5.  His regular rate of pay from 2011 through 2012 thus fluctuated between $6.10 and $7.50 per hour.  The fact that plaintiffs requested overtime at the rate of $11.25 per hour (suggesting a regular rate of $7.50 per hour) may constitute an inconsistency in the spreadsheet, but does not amount to a "concession" that Mr. Hernandez was receiving $7.50 per hour on a regular basis.

9

objectively unreasonable in pursuing plaintiffs' claims for minimum wage violations.

### E.  Settlement Negotiations

Defendants argue that Mr. Milstein demonstrated bad faith when he asked defendants to exclude any "offer for attorney fees and costs" from future settlement offers "because the inclusion of such sets up a potential conflict between me and my clients."  Docket No. 39 at 9-10.  Defendants argue that this statement evidences bad faith because Mr. Milstein's original settlement demand included both an amount requested to settle his clients' claims and a request for his own fees.  Docket No. 50 at 8.  Defendants contend that Mr. Milstein was seeking to hide his fee award from his clients because it was much larger than the amount they would likely recover in a settlement.  *Id*.

Mr. Milstein responds that his request does not evidence bad faith because "this Court and others counsel that the parties reach agreement regarding plaintiffs' damages ***before*** the parties address plaintiffs' attorney's fees and costs."  Docket No. 49 at 10 (emphasis in original).

"A number of courts and commentators have expressed concern regarding the simultaneous negotiation of relief and attorney's fees in the settlement of class actions." *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110 (S.D.N.Y. 1997).  Concerns arise from the risk that the "interest of plaintiffs' counsel in counsel's own compensation will adversely affect the extent of the relief counsel will procure for the clients."  *Id*. at 110-11.  To counteract this risk, the "better practice" is for counsel to "abstain from discussion of attorney's fees until an agreement is reached on the relief to be obtained

by the plaintiffs themselves" or "negotiate a lump sum settlement and allow the court to allocate the fund between counsel and client."  *Id*. at 111.

Mr. Milstein's request to exclude attorney's fees from settlement discussions until an award was negotiated for his clients is not sufficient to demonstrate subjective bad faith, even if his initial conduct was not fully consistent with this position.  Defendants do not advance any other evidence that Mr. Milstein had a conflict of interest with his clients.

Defendants further state that opposing counsel's refusal to make a counter-offer to settle the case "necessitated defendants' researching, drafting and filing their Rule 12(b)(6) motion," Docket No. 39 at 11, and that Mr. Milstein used the potential discovery costs on his frivolous claims to "leverage extortionate demands" from defendants. Docket No. 50 at 9.  Defendants do not provide factual support for these allegations.

Thus, there is no basis for finding that Mr. Milstein's conduct during the litigation demonstrated subjective bad faith.

### F.  Plaintiffs' Attorney's Fees

Plaintiffs argue that, under the FLSA, they are entitled to recover the attorney's fees accrued in litigating their FLSA claims.  Docket No. 55; *see* 29 U.S.C. § 216(b). Plaintiffs request attorney's fees in the amount of $25,324.98.  Docket No. 55 at 1. Defendants respond that the fees requested are unreasonable.  Docket No. 56 at 1.

In an action brought to enforce the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."  29 U.S.C. § 216(b).  "Payment of attorney fees and costs to a

prevailing party in an FLSA action is *mandatory*." *Wright v. U-Let-Us Skycap Servs., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986) (emphasis in original). "[P]laintiffs may be considered 'prevailing parties' for the attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal citation omitted).

Plaintiffs in this case succeeded on a significant issue in litigation and achieved some of the benefit they sought in bringing suit insofar as judgment entered against defendants on plaintiffs' claims for underpayment of overtime in violation of the FLSA. Under these circumstances, a fee award is mandatory. *See Wright*, 648 F. Supp. at 1218. The Court will proceed to calculate a reasonable fee award.

To determine a reasonable fee request, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### 1.  Hourly Rate

Plaintiffs request compensation at the rate of $250.00 per hour. Docket No. 55-1 at 2, ¶ 9.

A "reasonable rate" is the prevailing market rate in the relevant community for an

attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  In order to satisfy his burden, plaintiff must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In support of the requested hourly rate, plaintiffs offer the affidavits of two attorneys admitted to practice in Colorado who regularly represent workers in wage and hour cases and who affirm that the requested rate of $250 is reasonable.  Docket No. 55-1 at 9-10.  Defendants do not argue that this rate is unreasonable.  Case law in this district supports the conclusion that $250 is a reasonable rate in the Denver market, given that Mr. Milstein has seven years of experience practicing in the area of labor law. *See Fann v. Hartford Underwriters Ins. Co.*, No. 11-cv-03156-CMA-BNB, 2012 WL 5363786, at *2 (D. Colo. Oct. 31, 2012) (finding that $260 is a reasonable rate for a lawyer practicing in Colorado with seven years of experience); *Universal Drilling Co., Inc. v. Newpark Drilling Fluids, LLC*, No. 08-cv-02686-MSK-CBS, 2011 WL 715961, at *2 (D. Colo. Feb. 22, 2011) (citing 2008 Colorado Bar Association survey indicating that median hourly rate charged by associates at firms with more than thirty partners was $250 per hour).

The Court finds that $250 per hour is a reasonable rate.

### 2. *Number of Hours*

Plaintiffs request fees for 101.29992 hours of work.  Docket No. 55-1 at 2, ¶ 10.

Defendants argue that this request is excessive because plaintiffs expended many

hours working on claims that defendants maintain were frivolous.  Docket No. 56 at 4-8.

In determining the reasonableness of the hours expended, a court considers

several factors.  First, it considers whether the fees pertain to tasks that would ordinarily

be billed to a client.  *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

overruled on other grounds by *Penn. v. Del. Valley Citizens' Council for Clean Air*, 483

U.S. 711, 717 n. 4 (1987).  Plaintiff must demonstrate that his counsel used "billing

judgment" in winnowing down the hours actually spent to those reasonably expended.

*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).[3]  If not, a court

should take extra care to ensure that an attorney has not included unjustified charges in

his billing statement.  *Id.*  A court should also consider whether the amount of time

spent on a particular task appears reasonable in light of the complexity of the case, the

strategies pursued, and the responses necessitated by an opponent's maneuvering.  *Id.*

Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney

would reasonably bill for those same services in an open market and fees will be denied

for excessive, redundant, and otherwise unnecessary expenses.  *Ramos*, 713 F.2d at

---

[3]"In determining what is a reasonable time in which to perform a given task," an
attorney submitting billing entries should consider the following factors: (1) the
complexity of the case; (2) the number of reasonable strategies pursued; (3) the
responses necessitated by the maneuvering of the other side; and (4) "the potential
duplication of services" caused by the presence of multiple attorneys when one would
suffice.  *Ramos*, 713 F.2d at 554.

553.

The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Defendants do not argue that Mr. Milstein failed to exercise billing judgment by inflating the amount of time required to complete simple tasks or by charging his full rate for clerical or non-legal work.  Rather, defendants argue that the Court should deny fees for time spent responding to defendants' motion to dismiss and to defendants' motion for sanctions, as well as time spent researching plaintiffs' FLSA minimum wage claim, which defendants deem frivolous.  Docket No. 56 at 4-8.

As previously discussed, the Court did not rule on defendants' motion to dismiss and has not determined that any of plaintiffs' asserted claims were frivolous.  In addition, the Court is denying defendants' motion for sanctions.  The Court will not deny plaintiffs' fees for hours spent responding to defendants' motions or researching the minimum wage claim.

However, the Court is mindful that, "if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal citation omitted).  Concurring in *Farrar*, Justice O'Connor set forth three factors for courts to consider in evaluating a fee petition where plaintiffs

15

achieved only limited success: (1) the difference between the judgment sought and the amount recovered; (2) the extent to which plaintiffs succeeded on their theory of liability; and (3) the public purpose of the litigation.  506 U.S. at 121-22 (O'Connor, J., concurring); *see also Zinna v. Congrove*, 680 F.3d 1236, 1239-40 (10th Cir. 2012).

The first *Farrar* factor, while not determinative, is the most "critical" of the three factors.  *See Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997); *Lippoldt v. Cole*, 468 F.3d 1204, 1223 (10th Cir. 2006).  Success on only one of four claims in and of itself "does not diminish the reasonableness of awarding some attorney's fees commensurate with their legal efforts in bringing that claim." *Phelps*, 120 F.3d at 1132. Rather, a court "must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Jane L.*, 61 F.3d at 1511 (internal citation omitted).

The third factor "examines whether the judgment vindicates important rights and deters future lawless conduct as opposed to merely occupying the time and energy of counsel, court, and client." *Phelps*, 120 F.3d at 1132 (internal citation omitted).  "As a rule of thumb, the more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Zinna*, 680 F.3d at 1241 (internal citation omitted).

On February 1, 2013, plaintiffs sent defendants an initial settlement demand seeking $22,275.00 for Ms. Mendoza; $17,338.00 for Mr. Gomez; $4,000.00 for Ms. Muñoz; and $16,623.36 for Mr. Hernandez.  Docket No. 50-1 at 5.  These amounts

were intended to settle plaintiffs' minimum wage and overtime claims under the FLSA, plaintiffs' state law claims for violation of the Colorado Minimum Wage Act, and plaintiffs' breach of contract claims. *Id*. Following discovery, plaintiffs revised their settlement demand: Ms. Mendoza requested 6.4% of the amount she requested at the beginning of the case, Mr. Gomez requested 31%, and Mr. Hernandez requested 64%. *Compare id*. *with* Docket Nos. 40-1 at 5, 41-1 at 5, and 42-1 at 4. Defendants offered the revised settlement amounts in judgment. *See* Docket No. 56 at 3 ("defendants made 'full-value Rule 68' offers only to the extent defendants accepted plaintiffs Mendoza's, Gomez's, and Hernandez's FLSA overtime numbers in the May 23, 2013, settlement demand"). By the time the offers of judgment were made and accepted, plaintiffs had voluntarily dismissed their Colorado statutory claim, as well as their class and collective action allegations. *See* Docket No. 24 at 2. Plaintiffs' breach of contract claim was dismissed without prejudice. Docket No. 47.

The first *Farrar* factor tips against plaintiffs. In addition to succeeding on only one of several claims they asserted, and voluntarily abandoning their class and collective action allegations, they recovered less than one third of the damages sum initially requested. *Compare* Docket No. 50-1 at 5 *with* Docket Nos. 40-42. The second factor favors plaintiffs, but only slightly. They prevailed on their claim for unpaid overtime under the FLSA, one of their main theories of liability. However, the Court cannot say that this theory was more important than the other bases for liability asserted. Furthermore, this was not a case that developed or advanced the law in this area such that plaintiffs' narrow victory will have wide-ranging consequences for future

parties.  *Compare Phelps*, 120 F.3d at 1132.  The third factor also tips slightly in plaintiffs' favor.  Under the FLSA, Congress relies on private attorneys to enforce the basic right of workers to be paid for their labor.  *See Hauschild v. United States*, 53 Fed. Cl. 134, 146 (Fed. Cl. 2002) ("the purpose of the FLSA attorneys' fee provision is to provide an adequate economic incentive for private attorneys to take employment discrimination cases and thereby to ensure competent legal representation of legitimate claims") (internal citation omitted).  This case was brought to "vindicate[] important rights" and "deter[] future lawless conduct."  *See Phelps*, 120 F.3d at 1132.  However, there is no evidence that the violations at issue are particularly egregious.

As plaintiffs prevailed on only one of their three claims and recovered about one third of the amount initially sought, and as there is no great discrepancy in importance between the claims asserted, the Court divides the requested fees by three, yielding a figure of $8,441.66.  In recognition of the public purpose of this litigation in vindicating crucial rights and deterring future misconduct, the Court increases this figure to $9,500.00.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Joint Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Powers, with Points and Authorities [Docket No. 39] is DENIED.  It is further

**ORDERED** that Plaintiffs' Motion for Attorneys' Fees [Docket No. 55] is

GRANTED in part.  Plaintiffs are awarded $9,500.00 in reasonable attorney's fees.

DATED March 13, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge